1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FOTOUHI, EPPS, HILLGER & GILROY, et al.,

                Appellants,

   v.

PAUL MANSDORF,

                Appellee.

_____/

No. C 09-2472 CRB

**ORDER AFFIRMING IN PART AND REVERSING IN PART**

       This is an appeal arises from an April 27, 2009, ruling issued by Judge Newsome of the Bankruptcy Court.  The debtor in this case was a partner in a law firm at the time he declared bankruptcy, and the Trustee initiated this action to recover the value of the debtor's share in the partnership.  California Corporations Code provides that a dissociated member of a partnership is due the "amount that would have been distributable to the dissociating partner . . . if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociating partner and the partnership was wound up as of that date."  Cal. Corp. Code § 16701.  Because the debtor became dissociated as a matter of law when he declared bankruptcy, but his share was never bought out as required by § 16701, the Trustee asked the bankruptcy court to order such a payment.

United States District Court
For the Northern District of California

1     Appellants believe the bankruptcy judge erred in his valuation of the firm, and

2  therefore erred in his order requiring payment to the estate.  They also argue that the

3  bankruptcy judge inappropriately awarded attorneys' fees to the Trustee.  This Court

4  concludes that, based upon the evidence presented by the parties, the bankruptcy judge's

5  valuation must be affirmed, but that his award of attorneys' fees must be reversed.

6                              **Background**

7     Shahab Fotouhi, a partner at the law firm Fotouhi Epps Hillger & Gilroy LLP,

8  declared bankruptcy on August 29, 2005.  Despite the requirements of California

9  Corporations Code § 16701, the firm never bought out Fotouhi's share of the partnership.

10  Exh. 7, 48:2-16.

11     The Trustee initiated proceedings against Fotouhi, the firm, and the other partners to

12  receive the buyout price of Fotouhi's share in the partnership as allowed by California law.

13  Exh. 7, passim.  At trial, each side presented testimony from expert witnesses valuing

14  Fotouhi's share in the partnership pursuant to Cal. Corp. Code § 16701.  Exh. 7, passim.  Mr.

15  Pierotti, the Trustee's expert witness, valued the firm as of the date of the petition,

16  considering among other things accounts receivable and work in progress as of the petition

17  date.  Id. at 14-48.  He sought to calculate the value of the firm as a going concern at the time

18  of dissociation, partially because he had not been given sufficient evidence by Appellants to

19  calculate the liquidation value.  He calculated Fotouhi's share in the partnership to be

20  38.59%, based on the relative value of distributions over several years from the partnership

21  to Fotouhi.  Id. at 20:10-24:10.

22     Pierotti was clear that his analysis was not a liquidation analysis, which must also

23  include factors related to expenses incurred in winding down the firm.[1]  Id. at 34:13-35:9.  In

24  any event, Fotouhi did not provide Pierotti any evidence of wind-down expenses aside from

25  _____

26        [1]  In any event, given that the partnership in this case is a law firm, the difference between the going concern and liquidation values would not be substantial.  As noted by the bankruptcy court, "the pre-petition Foutouhi's work in progress and the pre-petition Fotouhi's accounts receivable would be

27  included in either a liquidation or going-concern valuation."  Exh. 7 at 28.  The expert further testified that a liquidation analysis would only differ from his going-concern analysis by including the "expenses

28  to wind down a firm."  Id. at 34.  As noted below, the expert was prevented from including these expenses because of Fotouhi's evasiveness.

United States District Court
For the Northern District of California

overhead. Id. at 35:17-36:2. Pierotti's final calculation for the value of the firm was $404,700 plus $1,011,314, or $1,416,014. Id. at 134:17-25. Fotouhi's share in that was 38.59%, or $546,440.18. Id. at 133:10-12.

Fotouhi's expert, Dr. Mahla,[2] also valued the partnership share, even though he had never before valued a law firm. Id. at 96-110. Mahla testified that the going concern value without Fotouhi was "essentially zero." Id. at 99:13-15. Mahla also submitted a value for the partnership share based on a liquidation value. Id. at 100:21-102:5. That value was calculated to be somewhere between $36,000 and $62,000. Id. at 110:10-11. Defendants conceded that Fotouhi's partnership share was 38.59%, but did not concede the issue of valuation. Id. at 118:8-12.

The court rejected Mahla's calculations because they were based on analysis that the court had previously rejected as incredible.[3] Id. at 133:13-25. The court refused to apply 11 U.S.C. § 541 and Jess to the post-petition collections because Fotouhi's law firm was not a sole proprietorship, and because goodwill associated with Fotouhi had been discounted. Id. at 135:1-6. The final value decided upon by the court for the value of Fotouhi's partnership interest on the date of the petition was Pierotti's number: $546,440.18 (38.59% of $1,414,015).[4] Id. at 133:10-12..

The court also granted attorneys' fees, pursuant to Cal. Corp. Code § 16701(i), to Trustee in what the court characterized as a "very, very close question." Id. at 136:6-7. The fees were awarded, payable by Fotouhi personally, in the amount of $25,000, subject to Trustee's counsel submitting time sheets showing at least that much work. Id. at 138:17-21.

---

[2] Although the Transcript (Exh. 7) and Appellee's Brief refer to the expert as Dr. Mahta, the correct name is Dr. Mahla.

[3] The rejection of this valuation was affirmed by the Bankruptcy Appellate Panel in a previous appeal. Exh. 7, at 133.

[4] While the bankruptcy judge characterized Pierotti's calculation as a "liquidation" value, Pierotti was clear that he in fact calculated a going concern value. This is an issue of semantics that appears derived from the fact that, because Pierotti was unable to calculate the firm's wind down expenses, the two kinds of calculations were essentially identical.

**United States District Court**
For the Northern District of California

1   Fotouhi was given the right to object to the fees if the time sheets showed less than $25,000

2   worth of work.  Id.

3         Fotouhi brought this timely appeal pursuant to 28 U.S.C. § 158(a).

4                               **Standard of Review**

5         The district court, in reviewing a bankruptcy court decision on appeal, applies a

6   "clearly erroneous" standard to the bankruptcy court's findings of fact and reviews that

7   court's conclusions of law *de novo*.  Robertson v. Peters (In re Weisman), 5 F.3d 417, 419

8   (9th Cir. 1993) ("We apply a clearly erroneous standard to the bankruptcy court's findings of

9   fact and review its conclusions of law *de novo*"); Briggs v. Kent (In Re Professional

10  Investment Properties of Am.), 955 F.2d 623, 626 (9th Cir. 1992), *cert. denied*, 506 U.S. 818

11  (1992).  Mixed questions of law and fact are reviewed *de novo*.  Hamada v. Far E. Nat'l Bank

12  (In Re Hamada), 291 F.3d 645, 649 (9th Cir. 2002).

13        In reviewing a grant of attorney's fees, the standard is:

14              We review the factual determinations underlying an award of
                attorneys'  fees for clear error, Fischer v. SJB-P.D., Inc., 214 F.3d
15              1115, 1118 (9th Cir. 2000), and the legal premises a [lower] court
                uses to determine an award *de novo*. Siegel v. Fed. Home Loan
16              Mortgage Corp., 143 F.3d 525, 528 (9th Cir. 1998).

17

18  Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1147-1148 (9th Cir. 2001).

19                               **Discussion**

20        Appellants claim that the Bankruptcy Court made four erroneous rulings in the April

21  27, 2009 trial.  (Opening Brief, p. 2:9-10).  First, they claim the Court erred in failing to treat

22  Fotouhi as dissociated upon filing his bankruptcy petition, as mandated by Cal. Corp. Code

23  § 16601(6)(A).  Second, appellants claim the Court wrongfully relied on the testimony of

24  Appellee's expert witness rather than that of the Appellant's expert witness.  Third, they

25  contend that the Court included Fotouhi's post-petition earnings in the bankruptcy estate, in

26  violation of 11 U.S.C. § 541(a)(6).  Finally, Appellants submit that the Court erred in

27  awarding attorney's fees to Appellee because Appellee failed to plead that entitlement in the

28  complaint as required by Federal Rule of Bankruptcy Procedure 7008(b).  This Court affirms

                                        4

1  the rulings of the Bankruptcy Court as to the first three issues and reverses as to the award of

2  attorney's fees.

3          1.     <u>The Bankruptcy Court Did Not Fail to Treat  Fotouhi as a Dissociated Partner</u>

4          At the heart of this case is Fotouhi's dissociation as a matter of law from the Fotouhi

5  Epps law firm.  It is undisputed that upon Fotouhi's filing of the bankruptcy petition, he

6  became a dissociated partner.  Cal. Corp. Code § 16601(6)(A) ("A partner is dissociated from

7  a partnership . . . [b]y becoming a debtor in bankruptcy").  The confounding factor is that

8  even though Fotouhi became a dissociated partner by operation of law, he continued

9  conducting business, even though he no longer had the right to do so.  Cal. Corp. Code

10  § 16603(1); <u>see</u> <u>e.g.</u>, Exh.7, 127:8-9.  The court correctly identified this problem – it

11  characterized Fotouhi as dissociated as a matter of law, but not as a matter of fact.  Exh.7,

12  128:17-130:5.  The firm did not treat Fotouhi as dissociated, and it did not buy out his

13  interest as required by Cal. Corp. Code § 16701.  <u>Id.</u> at 113:24-114:1; 128-129.

14          As the record clearly reflects, the court appropriately found that Fotouhi became

15  dissociated when he filed his bankruptcy petition.  The court acknowledged that Fotouhi was

16  dissociated, but also found that the fact that he kept on working and being paid as if he were

17  still a partner complicated matters.  <u>Id.</u> at 13-17; 80:1-3.  This recognition is not, as

18  Appellants would have us believe, a failure to treat him as dissociated.  It is merely a

19  recognition of the fact that he was dissociated in law, but still a de facto partner in fact.

20  Therefore, as to the first question on appeal, the Court did not err because it did find Fotouhi

21  to be dissociated by operation of § 16601(6)(A) and it did apply § 16701 to value the

22  partnership.

23          2.     <u>The Bankruptcy Court Did Not Err in Accepting Pierotti's Valuation of</u>

24               <u>Fotouhi's Partnership Interest Instead of Mahla's Valuation</u>

25          If a partner is dissociated, the partnership must buy out that partner's interest.  Cal.

26  Corp. Code § 16701(a).  The buyout price is calculated as if the partnership were, on the date

27  of dissociation, wound up and either liquidated or sold as a going concern without the

28  dissociated partner.  Cal. Corp Code § 16701(b).  The dissociated partner's share of the

United States District Court
For the Northern District of California

1   liquidation or going concern price is calculated as that partner's percentage of the profits, as

2   if the partnership's business is wound up. Cal. Corp. Code §§ 16701(b), 16807(b).

3      The Bankruptcy Court's valuation of Fotouhi's partnership relied on the evidence

4   provided by the Trustee's witness, who sought to value the firm as a going concern. This

5   raised the question of how one values a business as a going concern without one partner, as

6   required by the Corporations Code, when that partner in fact continued working for the firm

7   and continued to be productive. Exh.7, 27:21-30:25. Given the fact that Fotouhi continued

8   to work at the firm after his bankruptcy, the court heard evidence regarding "pre-petition

9   Fotouhi," who was dissociated, and a "post-petition Fotouhi," who chose to continue

10  working at the firm even though he was technically dissociated, and should have been bought

11  out. Id. at 27:24-28:1. The bankruptcy judge appropriately sought to determine what portion

12  of the value of the firm belonged to pre-petition Fotouhi, and was therefore allocable to the

13  bankruptcy estate. The Trustee's expert considered matters pending at the time of

14  dissolution, and calculated the value of the partnership pursuant to Jewel v. Boxer, 156 Cal.

15  App. 3d 171 (1984).

16     Appellants argue that Pierotti conducted neither a liquidation analysis, nor a going

17  concern analysis. In support of this argument, they note that Pierotti failed to account for

18  certain expenses that are required under a liquidation analysis. But Pierotti never claimed to

19  conduct a liquidation analysis – he consistently explained that he conducted a going concern

20  analysis, in part because Fotouhi never provided the evidence that would have been required

21  to conduct a liquidation analysis.

22     Appellants next argue that the going concern value was zero because without Fotouhi,

23  the firm was worthless. However, the only evidence Appellants rely on is the testimony of

24  Dr. Mahla. As a factual matter, the bankruptcy judge rejected Mahla's valuation because it

25  relied solely on calculations that had been previously rejected. Exh. 7 at 133:13-17. Given

26  the fact that this rejection was previously affirmed on appeal, such a conclusion is not clearly

27  erroneous.

28

**United States District Court**
For the Northern District of California

1    Appellants puts a new spin on this argument in his reply.  They argue that Pierotti

2  failed to value the firm as a going concern without Mr. Fotouhi, because the pending matters

3  were ultimately completed with Fotouhi's help .  Therefore, the argument goes, Pierotti failed

4  to follow the mandate of § 16701, which requires the valuation not include the dissociated

5  partner.  This argument misreads Pierotti's testimony.  In effect, Pierotti concluded that

6  Fotouhi was not a necessary player in finishing the pending matters of the firm, even though

7  he happened to be there when the matters were completed.  While Fotouhi was, in fact,

8  working at the firm, Pierotti sought to value the firm by considering Fotouhi to simply be

9  another associate.  There was no evidence before the bankruptcy court that the pending

10  matters could only be completed by Fotouhi, and Appellants should not be able to shield

11  otherwise recoverable assets merely by having Fotouhi present.  Pierotti and the bankruptcy

12  court assumed that the accounts receivable and the pending matters could be resolved

13  without Fotouhi, and there was no evidence to the contrary.  Rather, there was evidence that

14  only Fotouhi could bring in new clients and matters, but Pierotti appropriately did not include

15  any such value in his report.

16    Therefore, the Bankruptcy Court did not err in accepting Pierotti's valuation of the

17  firm as to the value on the date of the petition.  The bankruptcy court is therefore

18  AFFIRMED as to this issue.

19    3.    Did the Bankruptcy Court Err by Including in the Bankruptcy Estate Income

20        Earned by Fotouhi After the Commencement of Bankruptcy Proceedings?

21    Appellant's third argument overlaps substantially with his second.  Appellant again

22  argues that the bankruptcy judge erred by including some accounts receivable and pending

23  matters in his valuation of the firm, this time relying on 11 U.S.C. § 541. This argument is no

24  more persuasive.

25    Appellant here cites 11 U.S.C. § 541(a)(6), which provides that a bankruptcy estate

26  does not include "earnings from services performed by an individual debtor after the

27  commencement of the case."  See also In re Jess, 169 F.3d 1204 (9th Cir. 1999).  This does

28  not mean, however, that the estate does not receive its share of the total value of the firm.

**United States District Court**
For the Northern District of California

1    Rather, § 541(a)(6) simply means that the estate cannot lay claim to wages earned by Fotouhi

2    after the petition.  Therefore, had Fotouhi presented evidence that he was paid any wages as a

3    non-partner of the firm in the post-petition period, the estate could not claim those wages.

4    He has not done so.  Indeed, the bankruptcy court received testimony that "even when [the

5    Trustee] attempted to find out what his salary was or what his earning was, he was so

6    evasive, it's impossible to figure anything out."  Exh. 7, at 43.  Instead, Fotouhi seems to

7    assert that the post-petition partnership share belongs to him and constitutes his "earnings"

8    under § 541(a)(6).  But he forgets that, after the petition, he was no longer a partner <u>as a

9    matter of law</u>.  Therefore, post-petition Fotouhi has no partnership share, and the partnership

10   share remains property of the estate.  Had Fotouhi presented evidence of his wages in the

11   post-petition period, the bankruptcy should have taken those wages into account when

12   valuing the partnership.  But Fotouhi, who was in sole control of such documents, never

13   furnished them.  The bankruptcy court cannot be faulted for failing to consider evidence that

14   Fotouhi never disclosed.

15          Appellants' citation to <u>Jess</u> is similarly unavailing.  First, <u>Jess</u> does not in any way

16   address how to value a partnership, let alone how to value it under § 16701.  Instead, it dealt

17   with an individual attorney who declared bankruptcy in the middle of a case.  The Circuit in

18   <u>Jess</u> confronted the problem of how to allocate fees collected on a case where certain fees

19   require post-petition services to collect them.  This has nothing to do with valuing a

20   partnership as a going concern as of the date of a partner's bankruptcy.

21          4.     <u>Did the Bankruptcy Court Err in Awarding Attorneys' Fees When the Trustee</u>

22                 <u>Failed to Request Them in the Complaint?</u>

23          Because the Court's alleged error here is a legal one, the review is *de novo*.  <u>Siegel v.</u>

24   <u>Fed. Home Loan Mortgage Corp.</u>, 143 F.3d 525, 528 (9th Cir. 1998) ("[W]e review any

25   element of legal analysis and statutory interpretation, which figures in the [lower] court's

26   decision regarding attorney's fees, *de novo*.").  Appellant claims, and Appellee concedes, that

27   Appellee failed to include a request for attorneys' fees in the complaint.  Opening Brief, p.

28   21:16; Appellee Brief, p. 16:7-8.  California Corporations Code § 16701(i) gives courts the

United States District Court
For the Northern District of California

ability to award attorneys' fees to a party in these types of proceedings when the other party has "acted arbitrarily, vexatiously, or not in good faith."  However, Federal Rule of Bankruptcy Procedure 7008(b) requires that a request for an award of attorney's fees be pleaded as a claim in "a complaint, cross-claim, third-party complaint, answer, or reply as may be appropriate."

There is no question that Appellee was entitled to attorney's fees under the California Corporations Code – the Court found that Fotouhi had not acted in good faith by refusing to produce or delaying production of certain documents.  Exh. 7, 137:16-17.  However, Appellee did not claim an entitlement to attorneys' fees until it submitted Proposed Findings of Fact and Conclusions of Law.  Appellee Brief, p. 16:8-10.

In re Odom makes clear that a request for attorney's fees must be pled as a *claim* in the *complaint* (or in one of the other enumerated documents in FRBP 7008(b)).  113 B.R. 623, 625 (Bankr. C.D. Cal. 1990), followed by Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 2008 U.S. Dist. LEXIS 82451, *2-*3 (E.D. Cal. Sept. 23, 2008).  In Odom, as well as in Ormsby, requests for attorney's fees in the prayers for relief in the complaint, not pled as separate claims in the complaint, were denied as insufficient.  113 B.R. at 625; 2008 U.S. Dist. LEXIS 82451 at *2-*3.  In Fotouhi's case, the request was not in the complaint or any of the other enumerated documents; Appellee requested the fees in the Proposed Findings of Fact and Conclusions of Law.  Exh. 6, p. 6, ¶ 16.  Further, the request in the Proposed Findings specifically *excluded* Fotouhi from liability for the fees.  Id. ("The trustee is entitled to recover his attorney's fees from each defendant except Fotouhi pursuant to Cal. Corp. Code Section 16701(i)").  Nevertheless, the bankruptcy court awarded fees, payable by Fotouhi alone.  Looking to Odom and Ormsby, the request for fees was insufficient.

Therefore, because attorney's fees were not properly requested under FRBP 7008(b), they are barred because Appellant did not have adequate notice that attorney's fees would be sought at trial.  That award is therefore REVERSED.

//

//

9

1

**Conclusion**

2       For the abovementioned reasons, first three issues on appeal are AFFIRMED.  As to

3   the fourth issue, this Court REVERSES and remands to the Bankruptcy Court with

4   instructions to vacate the grant of attorney's fees.

5   **IT IS SO ORDERED.**

6

7

Dated: March 31, 2010                         _____

8                                             CHARLES  R. BREYER
                                              UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California